551 P.2d 1322

Jose **ACEVEDO**, Appellant,

v.

**PHOENIX OPPORTUNITIES INDUSTRI-
ALIZATION CENTER, an Ari-
zona Corporation, Appellee.**

**No. I CA–CIV 2977.**

Court of Appeals of Arizona,
Division 1.

July 1, 1976.

Richmond, Ajamie, Fay & Warner, by
Richard T. Aubuchon, Phoenix, for appel-
lant.

Andrews & Johnson, by Judis R. An-
drews, Phoenix, for appellee.

OPINION

HATHAWAY, Judge.

Appellant, employed by appellee, fre-
quently worked in excess of forty hours
per week, thereby accumulating a signifi-
cant amount of overtime hours. On Au-
gust 10, 1973, his employment was termi-
nated by appellee, at which time he de-
manded that appellee pay him for the ac-
crued overtime hours (comp time) at his
regular hourly wage. Appellee refused to
pay.

After a bench trial, the trial court made the following findings: (1) that appellant had accumulated uncompensated total comp time of 282.5 hours; (2) that compensatory time was not to be paid in cash, but was to be paid in the nature of time off the job with full pay; (3) that appellee had not violated A.R.S. Sec. 23–353(A) which requires that a discharged employee be paid wages due him at once; and (4) that despite the fact appellee changed from bi-monthly to bi-weekly payment of wages, and one week's wages were withheld, appellant was not owed any wages when he was terminated.

Our review of the record discloses that if an employee of appellee worked overtime, he or she recorded the amount of hours on a time sheet which was then signed by a supervisor. The signature of the supervisor was, in essence, validation of the time sheet.

On August 10, 1973, appellant had accumulated 282.5 hours of comp time. This fact was stipulated to by the parties and recognized by the trial court in its judgment. At trial, Leon Caver, appellee's personnel manager on August 10, 1973, testified as to appellee's procedure relative to compensatory time. He stated that he kept the records of appellant's comp time and never had to get approval from anyone prior to posting the amount of comp time in his records. During June or July 1973, appellee implemented its Manual of Personnel Policies and Practices which included under the heading Benefits and Privileges, a section entitled Compensatory Time which provided:

"Employee's [sic] maybe [sic] required in the judgment of the Executive Director to work before or after regular working hours. In such cases, if work continues for one half hour or more, time adjustments will be made.

Compensatory time may be taken at a later date, subject to approval by the immediate supervisor."

Caver further testified that if an employee accumulated comp time he would receive time away from work and still be paid in full. He was not aware of an instance, like the situation presented here, where upon termination an employee sought to be compensated in cash for his accrued comp time.

Caver testified that he never literally complied with the Compensatory Time section of the Manual in that he never questioned appellee's Executive Director as to whether compensatory time had been authorized for appellant or for other employees. In addition, he never received instructions from the Executive Director that comp time should not be authorized for appellant or for other employees.

On appeal, appellant contends that he should be compensated for the 282.5 hours of accumulated comp time, that this compensation should be in cash and that he should receive one week's wages withheld by appellee when the company changed from a bi-monthly to a bi-weekly payroll system.

Appellee, on the other hand, argues that appellant never proved he was authorized to work those overtime hours, that there was never a showing as to what services appellant actually performed, and that it was appellee's custom to compensate its employees for comp time by allowing time away from work at full pay.

■ We find no merit to appellee's argument. The record clearly establishes that there is no dispute as to the amount of comp time accrued by appellant. Whether or not appellant accumulated 282.5 hours of comp time is not an issue before this court. One issue presented, however, is whether or not appellant is entitled to be paid in cash for the comp time he accumulated upon being terminated by appellee. The record shows that appellee had established a policy of compensating its employees for comp time accrued by allowing them time away from the job at full pay. Appellee thereby recognized a benefit for which it had a duty to pay. Having agreed that it would compensate

its employees for comp time accrued, we see no justification for denying appellant's claim. Appellee intended that services performed by its employees in the nature of comp time were not gratuitous and were to be compensated. Appellant rendered services which were knowingly received by appellee as evidenced by (1) records of comp time accumulated and (2) supervisor validation of the time sheets containing the hours of comp time accrued. We find untenable appellee's position that the only way one could receive comp time is to stay employed. To allow appellee to terminate an employee thereby relieving itself of the obligation to pay comp time, would be patently unjust. In the absence of an express agreement between the parties delineating the method of pay for comp time accumulated, we will imply a contract based on the fact that appellant rendered services to appellee for which he had a reasonable expectation to be paid. 98 C.J.S. Work & Labor, § 8 (1957).

Appellee's failure to pay appellant for the 282.5 hours of comp time is in violation of A.R.S. Sec. 23–353(A) for which appellant may recover treble the amount of unpaid comp time. A.R.S. Sec. 23–355. The uncontradicted testimony reveals that appellant's regular hourly wage for purposes of comp time was $5.90. Since he accrued 282.5 hours of comp time, the amount of money withheld from appellant was $1,666.75. Pursuant to A.R.S. Sec. 23–355, appellant is entitled to treble that amount —$5,000.25—plus costs and reasonable attorneys' fees.

We do not agree, however, with appellant that he is owed one week's salary because wages were withheld during the time appellee changed from a bi-monthly to a bi-weekly pay period. The record discloses that appellant received two weeks' pay on August 3, 1973, which included pay for the two weeks ending July 27, 1973, and then received two weeks' pay on August 10, 1973, the date of his termination. Thus, it appears that appellant was paid for his services through the date of his termination. We therefore agree with the trial court that he was not owed one week's salary.

The judgment is affirmed as to appellant's claim for one week's salary. It is reversed as to appellant's claim for comp time and remanded with directions to enter judgment in favor of appellant in the amount of $5,000.25 plus costs, attorneys' fees in the sum of $500 for services performed in connection with this appeal, plus reasonable attorneys' fees to be determined upon remand for services performed in the trial court.

HOWARD, C. J., and KRUCKER, J., concurring.