(600 P 2d 148)

No. 49,962

GREGORY BENJAMIN, *Appellant,* v. MANPOWER, INC., OF WICHITA, *Appellee.*

Opinion filed September 28, 1979.

*Gerald W. Scott,* of Matlack, Foote, Scott, Joseph & Wilkinson, P.A., of Wichita, for appellant.

*Orval J. Kaufman,* of Kaufman, Bonwell & Foster, of Wichita, for appellee.

Before FOTH, C.J., ABBOTT and SPENCER, JJ.

ABBOTT, J.: The sole issue in this appeal over a $195 claim is whether the refusal of Manpower, Inc., of Wichita to honor the terms of its employment agreement with the plaintiff, Gregory Benjamin, amounted to bad faith sufficient to demonstrate a willful violation of K.S.A. 1978 Supp. 44-315, thereby entitling Benjamin to recover the statutory penalty provided for therein.

This dispute arose after Benjamin's employment was terminated and Manpower refused to pay Benjamin two weeks' vacation pay which he alleged was due under the employment contract. The trial judge found that the employment contract provided for two weeks vacation after one year of satisfactory

service and that Benjamin had completed one year's satisfactory service and was entitled to vacation pay for two weeks. Although Manpower disagrees with that portion of the trial court's decision, it did not appeal and has, in fact, paid the judgment and court costs. Benjamin appeals on the premise that the trial judge erred in failing to award damages for the willful failure to pay employee wages under K.S.A. 1978 Supp. 44-315. In this case, the parties agree that the proper penalty, if applicable, would be $195.

The trial judge was of the opinion, based on the testimony of Manpower's manager, that this was the first time Manpower had ever been confronted with a request for vacation pay after an employee has terminated or has been terminated, and he therefore did not feel the evidence was strong enough to show bad faith so he denied recovery of a penalty.

The general rule is that the determination of a knowing and willful failure to pay wages is a matter that is properly left to the finder of fact. *Holder v. Kansas Steel Built, Inc.*, 224 Kan. 406, 411, 582 P.2d 244 (1978). The trial judge found that Benjamin had not met his burden of proof, thus we are faced with a negative finding and our scope of review is limited.

"The effect of a negative finding by a trial court is that the party upon whom the burden of proof is cast did not sustain the requisite burden. Absent arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice the finding of the trial judge cannot be disturbed. An appellate court cannot nullify a trial judge's disbelief of evidence nor can it determine the persuasiveness of evidence which the trial judge may have believed." *Jennings v. Speaker, Executrix,* 1 Kan. App. 2d 610, Syl. ¶ 8, 571 P.2d 358 (1977).

Both parties rely in part on *Bradshaw v. Jayco Enterprises, Inc.*, 212 Kan. 206, 510 P.2d 174 (1973). We have examined the original briefs in *Bradshaw* and find that, there, the employer conceded that vacation pay was wages, and that issue was never before the court. A reading of the briefs indicates the controversy was over whether or not a vacation was part of the employment agreement and, if so, whether the vacation had been earned. We do not have those problems before us here, as Mr. Armstrong, vice president and general manager of Manpower, testified that a two-week vacation was earned upon satisfactory completion of one year's employment, that it was part of the employment agreement, and that Benjamin was treated as a full-time employee; that as of

March 12, 1977 (a date prior to his termination), Benjamin had earned the vacation and had the election of taking two weeks off with pay or, in lieu thereof, taking two weeks' pay. A reading of Armstrong's testimony can only be interpreted to mean that Benjamin had earned two weeks vacation as of March 12, 1977, and that there was no company policy known to Armstrong nor was there any agreement with employees that the earned vacation could be forfeited.

Wages are defined by K.S.A. 1978 Supp. 44-313(c) as follows: " 'Wages' means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions."

The Supreme Court decided in *Erickson v. General Motors Corporation,* 177 Kan. 90, 276 P.2d 376 (1954), that holiday pay was "wages" and, in discussing holiday pay, stated at 98-99:

"It was a condition of his employment, and he had to work to get it, and he got it as part of his compensation. If that be not true, then the employee received something to which he was not strictly entitled, a thing ordinarily called a bonus, and if it was a bonus, it was still wages under the statutory definition of wages."

Although the statute under consideration in *Erickson* specifically listed a "bonus" as wages, we do not deem it of significance in this case as we are of the opinion that vacation pay due pursuant to an employment contract constitutes "wages" as defined by K.S.A. 1978 Supp. 44-313(c); and if an employer willfully refuses to pay the same after demand is made therefor, that employer is subject to the statutory penalty. See *Textile Workers Union v. Williamsport Textile Corp.,* 136 F. Supp. 407, 408 (Middle D. Pa. 1955); *People v. Bishopp,* 56 Cal. App. 3d Supp. 8, 128 Cal. Rptr. 923, 926 (1976).

Manpower, Inc., is not a novice employer; its business is to employ people for other businesses. Mr. Armstrong, its vice president and general manager, testified that plaintiff had worked for one year as of March 12, 1977, and that plaintiff could choose either time off with pay or additional pay. Both Armstrong and Rogers (Benjamin's immediate supervisor) attempted to characterize the refusal to pay as an "honest dispute" of the kind that has previously been held sufficient to block the imposition of a penalty for willful withholding of wages. See *Holder v. Kansas Steel Built, Inc.,* 224 Kan. 406; *Holt v. Frito-Lay, Inc.,* 217 Kan.

56, 535 P.2d 450 (1975); *Bradshaw v. Jayco Enterprises, Inc.*, 212 Kan. at 206-07; *Gawthrop v. Missouri Pac. Rly. Co.*, 147 Kan. 756, Syl. ¶ 1, 78 P.2d 854 (1938).

Armstrong, although admitting that the vacation pay was due Benjamin as of March 12, 1977, attempted to qualify this admission with the statement that only employees who have "satisfactorily" completed a term of one year are entitled to the pay, and as plaintiff had been missing days and working reduced hours, this made him less than satisfactory. He admitted, however, that neither of these factors (reduced hours, occasional days off) would affect one's right to the vacation pay, and that to his knowledge nothing was ever said to plaintiff about these alleged problems, nor was he told that his vacation pay might be in jeopardy. Benjamin testified that he had, in fact, taken three days off in January and February 1977. In each instance his immediate supervisor, Rogers, gave him permission to take the day off; once to attend his grandfather's funeral, once to attend a college professor's funeral, and once to enroll in college.

The problem leading to termination of Benjamin's employment started in April 1977 when Benjamin requested a reduction in his hours and that he have Saturdays off. An effort was made to accommodate his request, but on April 27, 1977, during a telephone conversation, he either was fired or he quit. Benjamin testified he was fired and Rogers testified Benjamin quit. A memo written by Rogers on the day of termination states, "I [Rogers] then advised him [Benjamin] I would have to find someone to replace him." Rogers agreed twice during his testimony that "according to the statement" he had terminated Benjamin. Nevertheless, Rogers continued to assert that plaintiff's vacation pay was denied because he "quit" on short notice. Rogers also stated that plaintiff's unsatisfactory work performance had entered into the decision to deny him his accrued pay. He related no specifics, however, stating that he had not talked with plaintiff about any problems, and admitting that plaintiff's absences had been with his permission and had no bearing on plaintiff's right to collect vacation pay.

It is immaterial whether Benjamin quit or was fired, for K.S.A. 1978 Supp. 44-315(*a*) applies, and "[w]henever an employer discharges an employee *or* whenever an employee quits or resigns, the employer shall pay the employee's earned wages . . . ." (Emphasis supplied.)

In the absence of a valid contract provision authorizing forfeiture, vacation pay cannot be forfeited once the worker has earned the same. In this case there was no valid dispute over the contract provision for a paid vacation; the contract term had passed without the employer complaining to the worker about the quantity or quality of his work. The trial court found the worker was entitled to a paid vacation as of March 12, 1977. The employer thereafter had no legal right to declare the vacation wages forfeited or to refuse to pay the same. The employee requested that he be paid, as he had a right to do under his contract of employment, and his employer refused to pay. On the record before us, anything else that occurred in this case after March 12, 1977, cannot be used by the employer to establish an honest dispute. It would "gut" the statute to permit an employer to escape paying the statutory penalty for willful refusal to pay earned wages by saying, in effect, that an honest dispute exists because it has never before had a demand for vacation pay made by an employee who quit or was fired and thus has never been faced with the exact set of facts. Neither can an employer be permitted to reexamine whether or not an employee's work was "satisfactory" after wages (vacation pay) have been earned and the employee has been terminated.

We are of the opinion that the trial judge arbitrarily disregarded undisputed evidence on the critical facts, and his decision that Manpower's violation of the statute was not willful was based on Manpower's attempt to rely on forfeiture or reexamination of a question it could not reexamine; therefore it cannot be held that an "honest dispute" existed. In summary, Benjamin had met the requirements for the wages and the right to the wages was vested. Once vested, the wages could not be forfeited and the employer's attempt to retroactively forfeit the wages cannot form the basis for a "good-faith dispute."

The judgment is reversed with directions for the trial judge to enter judgment for the plaintiff for the statutory penalty provided for in K.S.A. 1978 Supp. 44-315 in the agreed amount of $195.

Reversed with directions.