(627 P.2d 1143)

No. 51,551

ANITA R. RICHARDSON, *Appellant,* v. THE ST. MARY HOSPITAL, *Appellee.*

Opinion filed May 8, 1981.

*J. Marcus Goodman,* of the Kansas Department of Human Resources, *Reid Stacey,* assistant attorney general, and *Robert T. Stephan,* attorney general, for secretary of human resources, assignee of appellant.

*John Conderman* and *Mark A. Furney,* of Arthur, Green, Arthur & Conderman, of Manhattan, for appellee.

*Arthur E. Palmer* and *Charles R. Hay,* of Goodell, Stratton, Edmonds, Palmer & Wright, of Topeka, for *amicus curiae,* Kansas Hospital Association.

Before JUSTICE PRAGER, presiding, ABBOTT, J., and J. PATRICK BRAZIL, District Judge, assigned.

ABBOTT, J.: This is an appeal by the secretary of human resources from a district court order denying claimant, Anita R. Richardson, the sum of $260.19 which she alleges is due her as "wages" as defined by K.S.A. 1980 Supp. 44-313(*c*). The action being appealed is the district court's review of an administrative decision that allowed Mrs. Richardson the full amount of her claimed wages. The secretary of the Kansas Department of Human Resources is the real party in interest by virtue of K.S.A. 1980 Supp. 44-324(*b*).

The operative facts are not in dispute. On September 8, 1975,

Mrs. Richardson was employed as a nurse by the defendant, St. Mary Hospital, Manhattan, Kansas. On May 22, 1977, she took maternity leave. On two separate days during her maternity leave, she returned to work at defendant's request due to a shortage of nurses. While she was on maternity leave, she accepted a position with another employer; and rather than returning to her employment with defendant on the scheduled date of July 17, 1977, she notified defendant's personnel director on June 21, 1977, that she was resigning. It was mutually agreed that her last day "at work" would be July 2, 1977. Her final check was for fifty percent of her accumulated "earned time."

Mrs. Richardson filed a claim for the remaining fifty percent of her earned time. The hearing examiner of the Kansas Department of Human Resources held that the accrued time is wages as defined by K.S.A. 1978 Supp. 44-313(c), and ordered the hospital to pay her $260.19 (61.95 hours at $4.20 per hour). The hospital appealed to the district court. The district court concluded that fringe benefits which the employer and employee have contracted for amount to wages as defined by K.S.A. 1978 Supp. 44-313(c), but that a contract provision concerning the earned time (which we will discuss hereinafter) was a condition precedent, not a condition subsequent, and that Mrs. Richardson was not entitled to recover the remaining fifty percent of accumulated earned time.

The method for accruing earned time is set out in an employee handbook and is part of the employment contract; it is unique in that it provides for paid absences for sick leave, holidays and vacation time all together. Any employee paid-absence is paid out of earned time. The accrual is figured each pay period based on both regular hours worked and any earned time for which the employee is paid, so that both full-time and part-time employees accrue earned time in proportion to the number of hours worked. A maximum 192 hours of earned time (twenty-four, eight-hour days) can accrue in a twelve-month period. An employee can accumulate a maximum of 480 hours. The accrual factor of .0924 is used during the first five years of employment, and that multiplied by the "regular hours worked, excluding overtime, plus 'Earned Time' hours taken, if any" is carried to the nearest hundredth to establish the amount of accrued earned time. A greater factor is used for employees having over five years of

service. Earned time accrual is not based on any overtime hours. The record indicates that it is intended for each employee having less than five years' service to receive two weeks' (10 days) vacation each year, leaving fourteen days for paid holidays and sick leave.

The employment contract provides for the accrual of earned time from the date of employment, but if employment is terminated during the first 90 days the employee will not be paid for any unused accrued time. Sick leave and holiday pay is received by writing on the time card the number of hours the employee wishes to be paid for and designating it as "ET." It is required that all vacation time be arranged for in advance. The employment contract provides that upon retirement an employee will be paid for 100 percent of accrued earned time up to the maximum that can be accrued.

An employee is allowed to use accrued earned time during an approved leave of absence. Mrs. Richardson requested and was granted a leave of absence for maternity purposes, commencing on May 22, 1977. She was to return to work on July 17, 1977. She elected to use 32 hours of accumulated earned time each week during her leave of absence. When she gave two weeks' notice, the hospital terminated her use of earned time pursuant to the employment contract and paid her for one-half of her accumulated earned time, also pursuant to the contract.

The employment contract provides:

"Employees who are terminating or transferring to an On-call position who have unused 'Earned Time' as of their resignation or last day worked, will be paid for unused 'Earned Time' according to the following percentages:
   50% for up to five (5) years of service
   60% for five (5) to ten (10) years of service
   75% for over ten (10) years of service."

Plaintiff argues that earned time is wages pursuant to K.S.A. 1980 Supp. 44-313(c) and is due the workers as provided in 1980 Supp. 44-315(a) and 44-321. K.S.A. 1980 Supp. 44-313(c) provides:

" 'Wages' means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions."

K.S.A. 1980 Supp. 44-315(a) provides:

"Whenever an employer discharges an employee or whenever an employee

quits or resigns, the employer shall pay the employee's *earned wages* not later than the next regular payday upon which he or she would have been paid if still employed as provided under K.S.A. 1977 Supp. 44-314, either through the regular pay channels or by mail postmarked within the deadlines herein specified if requested by the employeé." (Emphasis supplied.)

### K.S.A. 44-321 states:

"Except as provided in section 12 [44-324] of this act, no provision of, or any right created under this act may in any way be contravened, set aside or waived."

### Plaintiff also relies on K.A.R. 49-20-1F, which provides:

" 'Or other basis', within the meaning of K.S.A. 44-313(*c*), shall include all agreed compensation for services including, but not limited to, profit sharing and fringe benefits for which the conditions required for entitlement, eligibility, accrual or earning have been met by the employee. Conditions subsequent to such entitlement, eligibility, accrual or earning resulting in a forfeiture or loss of such earned wage shall be ineffective and unenforceable."

Plaintiff requests that this court extend the rule of *Benjamin v. Manpower, Inc., of Wichita,* 3 Kan. App. 2d 657, 600 P.2d 148 (1979), to cover the facts of this case. In *Benjamin,* this court held that vacation pay earned and due pursuant to an employment contract constitutes "wages" as defined by K.S.A. 1980 Supp. 44-313(*c*). We remain satisfied with our decision in *Benjamin.* Wages and vacation time earned and due to an employee pursuant to an employment contract may not be forfeited. That rule, however, does not apply to the facts in this case. In *Benjamin* we dealt with an employment contract that gave the employee an absolute right to a two weeks' annual vacation or two weeks' pay. In this case, a full-time employee earns 24 working days a year that can be used by taking a two weeks' vacation (10 days) and saving the remaining 14 days for sick leave, authorized leave of absence, or paid holidays. In what appears to be an effort to prevent abuse of sick leave, the employer agreed to pay an employee on a set formula for accrued earned time when employment is terminated other than by retirement.

Parties have wide discretion in fixing the terms of employment contracts, and when the employment contract is not contrary to law it should be honored and enforced by the courts. As we view the employment contract here, we are of the opinion that the trial judge correctly determined that the earned time was not wages under the employment contract and that the right to pay was conditioned upon the employee's continued employment. The

trial judge determined that the condition of employment is a condition precedent, not a condition subsequent. While the language used in the employment contract borders on being a condition subsequent, we are convinced that the right to use the accumulated earned time was absolute during the employment, and the right to payment for accrued time not used during the term of employment for which the employee elects to be paid when employment is terminated is governed by the employment contract and is not in violation of existing statutes and regulations.

It is argued in an *amicus curiae* brief that the state wage laws embodied in chapter 44 of Kansas Statutes Annotated are preempted by the federal Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* (1976). This issue is raised for the first time by the Kansas Hospital Association, which is not even a party to the appeal, so we need not consider it. *Fleming v. Etherington,* 227 Kan. 795, Syl. ¶ 7, 610 P.2d 592 (1980). In any event, the argument lacks merit. 29 C.F.R. § 2510.3-1(b)(3)(i) (1980) states: "[T]he terms 'employee welfare benefit plan' . . . shall not include . . . [p]ayment of compensation while an employee is on vacation or absent on a holiday, including payment of premiums to induce employees to take vacations at a time favorable to the employer for business reasons." This regulation precludes vacation pay from being considered an "employee welfare benefit plan" (29 U.S.C. § 1002[1]). Furthermore, vacation pay does not fall under the definition of a "pension plan" (29 U.S.C. § 1002[2]). Therefore, we find that ERISA does not apply here.

It is also argued that the district court allegedly erred by making findings on issues not determined by the hearing examiner instead of remanding the case for additional findings.

A district court's scope of review in this type of action was reviewed in *Swezey v. State Department of Social & Rehabilitation Services,* 1 Kan. App. 2d 94, 562 P.2d 117 (1977). *Swezey* dealt with review of findings of fact. In reviewing questions of law, the trial court may substitute its judgment for that of the agency, although ordinarily the court will give deference to the agency's interpretation of the law. Ryan, *Judicial Review of Administrative Action—Kansas Perspectives,* 19 Washburn L.J. 423, 432 (1980); see *Southwestern Bell Telephone Co. v. Em-*

*ployment Security Board of Review,* 189 Kan. 600, 607, 371 P.2d 134 (1962). The issues in this case are questions of mixed law and fact, and both standards of review apply.

The complaint is that the hearing examiner did not consider the question of whether the vacation pay would constitute wages under K.S.A. 1980 Supp. 44-313(*c*) and K.A.R. 49-20-1F. The issue was considered by the hearing examiner, as reflected in his written findings: "That claimant did not receive the wages due her on July 2, 1977, as is required by the provisions of K.S.A. 44-313(c) and K.A.R. 49-20-1(F)." The district court did not err in conducting its review on the record taken below, and in our opinion it followed the statutorily prescribed standard of review. K.S.A. 1980 Supp. 44-322a(*e*).

Affirmed.