234 Kan. 1016 (1984)
677 P.2d 1004
CHARLES W. WEINZIRL, Appellee/Cross-Appellant,
v.
THE WELLS GROUP, INC., Appellant/Cross-Appellee.
No. 55,731
Supreme Court of Kansas.
Opinion filed February 18, 1984.
David D. Moshier, of Hampton, Royce, Engleman & Nelson, of Salina, argued the cause and was on the brief for the appellant and cross-appellee.
Greg A. Bengtson, of Clark, Mize & Linville, Chartered, of Salina, argued the cause and was on the brief for the appellee and cross-appellant.
Kay Y. Rute, of Topeka, was on the amicus curiae brief for the Kansas Department of Human Resources.
The opinion of the court was delivered by
LOCKETT, J.:
This is an appeal from the district court in which the district court sustained in part and reversed in part a decision by a Department of Human Resources hearing officer and approved by the Secretary of Human Resources. In sustaining the *1017 hearing officer's decision, the court held the employee was entitled to the payment of the disputed wages. In reversing the hearing officer, the court held the employee was not entitled to statutory penalties for the employer's failure to pay the disputed wages. The court also held the employee was not entitled to prejudgment interest. Both parties appeal.
Charles Weinzirl was employed as the sole sales representative of The Wells Group, Inc. (Wells) for a period from November 1, 1978, until October 28, 1981. Weinzirl was hired by Wells to solicit accounts throughout Kansas for maintenance contracts, both new and renewal, to solicit testing and balancing contract work, and energy audits.
From January 11, 1979, through the early part of November, 1980, Weinzirl was employed by Wells under an oral employment contract. The oral agreement provided for Weinzirl to receive a salary of $1,400.00 per month, plus a commission of 5% of gross sales on new contracts, and a 2% commission on gross sales of renewals of contracts. The commissions were payable monthly on the fifth day of the next succeeding month following receipt of the payment on such contracts.
During the early part of November, 1980, Weinzirl requested the employment agreement be formalized in writing. Weinzirl retained the services of an attorney. After negotiations were completed, an employment agreement was executed on November 10, 1980. The written employment contract was substantially similar to the oral agreement. The contract provided, in addition, that if Weinzirl voluntarily terminated his employment or was terminated because of a breach of duty, he would be entitled only to commission payments received by Wells prior to the date of termination. Any payments which included commissions that Wells received after Weinzirl's termination would be forfeited by Weinzirl and deemed liquidated damages arising out of the voluntary termination or breach of duty. The agreement further provided that in the case of involuntary termination, Weinzirl would be entitled to all commissions paid or unpaid. Wells would calculate all commissions due, even if the full contract price was not yet received.
Weinzirl objected to Well's inclusion into the employment contract the clause requiring that if Weinzirl voluntarily terminated his employment, he would forfeit all commissions not *1018 received by Wells as "liquidated damages." Until Weinzirl signed the employment agreement, Wells paid Weinzirl's base salary but refused to advance $400.00 to Weinzirl against commissions not yet due him. Upon signing the agreement, Weinzirl received a $400.00 advance as requested.
Disputes soon arose between Weinzirl and his employer as to whether certain maintenance contracts obtained were new or renewal. Weinzirl voluntarily terminated his employment. After Weinzirl announced his resignation, he was presented with his final paycheck from Wells in the amount of $510.35, and a release statement saying all money owed him had been paid. Weinzirl would thus forfeit his right to additional commissions. Weinzirl refused to sign the release, but accepted and cashed the paycheck with the notation "final wage payment."
Weinzirl made a claim to the Department of Human Resources for the balance of his commission. Weinzirl claimed he was entitled to commissions totaling $14,138.01.
The hearing officer found Weinzirl was entitled to $8,306.21 in earned wages, and a penalty of $8,306.21 against Wells. Wells appealed. Upon review, the district court upheld the award of $8,306.21 as earned wages but reversed on the penalty imposed and refused to award prejudgment interest claimed by Weinzirl for the first time in the district court. Both parties now appeal.
Wells argues it is entitled to de novo review of the evidence. This is an incorrect assertion of both statutory and case law. Kansas statutes require in certain appeals that a district court not reweigh the evidence. K.S.A. 1983 Supp. 44-322a(e) provides: "The review shall be conducted by the district court upon the record of the hearing."
This court has long recognized that neither the district court nor the appellate court may substitute their judgment for that of the administrative tribunal. Kansas State Board of Healing Arts v. Foote, 200 Kan. 447, 436 P.2d 828 (1968), 28 A.L.R.3d 472. See also City of Wichita v. Board of Sedgwick County Comm'rs, 232 Kan. 149, 151, 652 P.2d 717 (1982); Kansas State Board of Healing Arts v. Burwell, 5 Kan. App.2d 357, 358-59, 616 P.2d 1084, rev. denied 288 Kan. 807 (1980).
Wells argues as its sole issue on appeal that the trial court erred in upholding the hearing examiner's award for the commissions as earned wages.
*1019 The Kansas Wage Payment Act provides:
"(a) Whenever an employer discharges an employee or whenever an employee quits or resigns, the employer shall pay the employee's earned wages not later than the next regular payday upon which he or she would have been paid if still employed...." K.S.A. 44-315.
Parties have wide discretion in fixing the terms of employment contracts, and when the employment contract is not contrary to the law or unreasonable in its terms, it should be honored and enforced by the courts. In determining the rights which occur under an employment contract, the entitlement thereto or eligibility therefor, the terms of the contract control so long as they are not unreasonable or illegal. Sweet v. Stormont Vail Regional Medical Center, 231 Kan. 604, 647 P.2d 1274 (1982).
There is no question that Weinzirl was Wells' employee. Both the hearing examiner and the district court found at the time of Weinzirl's resignation that he had procured the sale of numerous contracts to which he was entitled to commissions of $8,306.21 from Wells.
Wells claims Weinzirl was not entitled to the disputed wages under the terms of the employment agreement since Weinzirl had voluntarily terminated his employment. The employment agreement provided Weinzirl would forfeit as liquidated damages all commissions not yet received by Wells if he voluntarily left Wells' employment. In other words, if Weinzirl sold a contract in July which provided for monthly payments, Weinzirl would receive his commission percentage each month upon payment on the contract to Wells. When Weinzirl left his employment in November, he forfeited as liquidated damages the rest of his commission earned, but yet to be paid, each month from December until the contract expired in July.
The hearing examiner was correct when he determined the Kansas law prohibits employers from withholding an employee's wages as "liquidated damages." See K.S.A. 44-319. Further, the law provides an employee may not waive this right. See K.S.A. 44-321 and K.A.R. 1983 Supp. 49-21-2(b)(6). Thus, the employment contract provision which allowed respondent to withhold claimant's earned commission as liquidated damages was in contravention of the law and could not be upheld.
Wells further argues the commissions were not yet earned. It claims the commissions were paid not only for the sale of the *1020 contracts, but for the continued servicing of respondent's clients, a condition precedent to the earning of the commission.
A condition precedent is something that is agreed must happen or be performed before a right can occur to enforce the main contract. It is one without the performance of which the contract entered into between the parties cannot be enforced. A condition precedent requires the performance of some act or happening of some event after the terms of the contract, including the condition precedent, have been agreed on before the contract shall take effect.
In support, respondent cites several cases which discuss conditions precedent. See Sweet v. Stormont Vail Regional Medical Center, 231 Kan. 604; Benjamin v. Manpower, Inc., of Wichita, 3 Kan. App.2d 657, 600 P.2d 148 (1979); Richardson v. St. Mary Hospital, 6 Kan. App.2d 238, 627 P.2d 1143, rev. denied 229 Kan. 671 (1981).
Stormont Vail concerned an employee's accrued vacation time unused at the time of termination. The court discussed whether unused vacation time was a fringe benefit which constituted earned wages. This court held that since there was no inherent right to vacation, or payment for unused vacation time, the rights thereto must be found in the employment contract. 231 Kan. at 611. Where the employee failed to give notice, a condition precedent, as required in the employment contract, the employee's accrued vacation time did not constitute "earned wages." Benjamin and Richardson similarly involved vacation as a fringe benefit. In all three cases the appellate courts found that conditions precedent, such as giving two weeks notice or continued employment, were determinative of whether the employee would be allowed to reduce the accrued fringe benefit to a cash payment under the employment contracts.
In the instant case, Wells claims the employment contract clause requiring continued employment in order to receive commissions was a valid condition precedent. Wells asserts Weinzirl was required not only to sell but service the clients throughout the contract term in order to receive his commission. Here, Weinzirl was not seeking to recover a cash payment for a fringe benefit; rather, he is seeking to recover wages already earned but not yet paid. The employment agreement stated he was to receive commissions for the "gross sales of new *1021 ... contracts" and for the "gross sales of renewal ... contracts." The hearing examiner and the district court found the servicing of the client's clauses throughout the contract were used merely to determine the amount of commission due Weinzirl as a new or renewal contract. Both the hearing officer and the trial court found there was no condition precedent to claimant's entitlement to the commissions. This finding, by the hearing officer and the trial judge, is supported by substantial evidence and cannot be set aside by this court on review.
Weinzirl argues the trial court and hearing examiner both erred in denying claimant's recovery for commissions totaling $5,061.20 on contracts not yet executed, but which claimant had spent a considerable amount of time procuring.
These contracts involved several prospective clients. Weinzirl worked on these projects for eighteen months prior to his termination. The actual contracts, however, were not executed until after he resigned his employment.
The employment agreement provision determining when a commission of Weinzirl's became earned has already been discussed. A commission was earned under the employment agreement upon the sale of the contract. Regardless of how much time Weinzirl spent procuring these contracts, the sale did not occur until after he left the employ of respondent. Thus, he was not entitled to commissions for contracts being negotiated but not sold.
The hearing examiner and trial court did not err in disallowing Weinzirl the commissions for contracts not sold at the time of his voluntary termination.
Weinzirl next contends the trial court erred in denying him the statutory penalties awarded by the hearing examiner.
Penalties are authorized by K.S.A. 44-315(b) which provides:
"If an employer knowingly fails to pay an employee wages as required under subsection (a) of this section, such employer shall be liable therefor and shall be additionally liable for damages in the fixed amount of one percent (1%) of the unpaid wages for each day, except Sunday and legal holidays, upon which such failure continues after the eighth day after the day upon which payment is required or in an amount equal to the unpaid wages, whichever is smaller, except that such penalty shall apply only in the event of a willful violation."
Wells paid $510.35 to Weinzirl upon his termination. Weinzirl claims an additional $14,138.01 due as "earned wages" under the employment contract. The hearing examiner and the trial *1022 judge each determined Weinzirl was owed $8,306.21 additional wages, not $14,138.01 as claimed.
The district judge reversed the hearing examiner's imposition of a penalty finding that imposition of a penalty was not substantially supported by the evidence. The hearing examiner in his findings of fact merely stated: "The earned wages ... were knowingly withheld from Claimant and this action was willful on Respondent's part." He then concluded that the provision contained in the wage agreement allowing earned commission to be withheld as liquidated damages violated K.S.A. 44-319 and K.A.R. 1983 Supp. 49-21-2(b)(6); that an employer who knowingly and willfully enters into such a contract that violates the statute must pay a penalty.
Prior to 1973, under the Payment of Wages Act, no penalty could be assessed when there was an honest dispute between an employer and employee as to the amount due the employee as wages. See Gawthrop v. Missouri Pac. Rly. Co., 147 Kan. 756, 78 P.2d 854 (1938). In Holt v. Frito-Lay, Inc., 217 Kan. 56, 535 P.2d 450 (1975), it was stated if the employee and employer in good faith disagree as to the amount due, there exists an honest dispute regardless of the amount finally due.
The "genuine controversy" and "honest dispute" language in the prior cases was a result of judicial decision. These words were not found in the former statutes.
In 1973, a new statute was passed adding certain words. A penalty is to be imposed under K.S.A. 44-315(b) "[i]f an employer knowingly fails to pay an employee wages" within the specified time after discharge or resignation. The penalty allowed would apply only in the event of a willful violation of the act by the employer.
What is a "willful" violation? The Oregon Supreme Court has interpreted the word willful:
"`In civil cases the word "willful," as ordinarily used in courts of law, does not necessarily imply anything blamable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done was done or omitted intentionally. It amounts to nothing more than this: That the person knows what he is doing, intends to do what he is doing, and is a free agent.'" State ex rel Nilsen v. Johnston et ux, 233 Or. 103, 108, 377 P.2d 331 (1962). Emphasis supplied.
If an employer of his own free will innocently enters into an unlawful employment contract requested and written by an *1023 employee, under a literal interpretation of the Oregon law, the employer would be liable for the statutory penalty. In Holder v. Kansas Steel Built, Inc., 224 Kan. 406, 411, 582 P.2d 244 (1978), we stated under K.S.A. 44-135(b) "[a] willful act is one indicating a design, purpose, or intent on the part of a person to do wrong or to cause an injury to another." There was evidence in Holder that the employer intentionally made large deductions from gross profit figures to reduce the employee's commission, a willful act designed by the employer to wrong the employee.
Where the hearing officer did not find that Wells had a design, purpose or intent to willfully wrong or injure Weinzirl when it failed to pay the disputed wages, the district court was correct in finding that there was not substantial evidence to support the hearing officer's imposition of a penalty under K.S.A. 44-315.
Weinzirl contends the district court erred when it did not award interest. Weinzirl was not awarded interest under K.S.A. 16-201 by the hearing examiner. He first requested interest after the matter was appealed to the district court. The district court denied Weinzirl interest, stating this was not an appropriate case to award interest.
Until 1983, the Kansas Wage Payment Act contained no provision authorizing the assessment of the interest in addition to the statutory penalty. In 1983, K.S.A. 44-323(a) was amended to read:
"At the discretion of the hearing officer, interest, as provided under K.S.A. 16-201, and amendments thereto, may be assessed on wage claims found to be due and owing from the date the wages were due as defined in K.S.A. 44-314, and amendments thereto."
Under the statute, the awarding of interest is at the discretion of the hearing officer, not statutory interest as imposed under K.S.A. 16-201.
Where an employee elects to pursue the statutory remedy provided in case of willful nonpayment of wages, the employee is limited to the recovery provided by the statute. Prior to the 1983 amendment, K.S.A. 44-323 contained no provision for awarding interest. Subsequent to the 1983 amendment, the awarding of interest is discretionary and may be assessed on the wage claim found due and owing from the date the wages were due. The district court's refusal to award interest was proper.
The judgment is affirmed on both appeal and cross-appeal.
*1024 HERD, J., concurring and dissenting:
I concur with the majority holding The Wells Group owes Weinzirl $8,306.21 in commissions. I dissent from the majority's finding "the hearing officer did not find that Wells had a design, purpose or intent to willfully wrong or injure Weinzirl when it failed to pay the disputed wages," When the hearing examiner specifically found, "The earned wages ... were knowingly withheld from Claimant and this action was willful on Respondent's part."
The question of whether The Wells Group's act was a knowing and willful failure to pay wages is a fact issue for a jury or the factfinder to determine. See Holder v. Kansas Steel Built, Inc., 224 Kan. 406, 582 P.2d 244 (1978). Here, the hearing examiner is the factfinder. He found the Wells act knowing and willful. The scope of appellate review is to determine if there is substantial competent evidence to support the examiner's findings. There is ample evidence to support the examiner. It is undisputed Wells agreed to pay Weinzirl five percent commission on gross new sales and two percent commission on gross renewal contracts. Wells drafted the employment contract containing a clause requiring Weinzirl to forfeit all of his earned commissions which had not yet been paid as "liquidated damages" if he resigned. Such a forfeiture provision is in violation of the Kansas Wage Payment Act and, therefore, void. The majority so held. Wells' action was a knowing and willful attempt to deprive Weinzirl of his earnings in violation of the law. I can think of no more glaring example of a person indicating an intent to wrong another. Wells intended to punish Weinzirl by making him forfeit wages if he resigned. That is an attempt to injure the employee, which is defined as wrong by statute. Such action should be condemned by imposition of the penalties pursuant to the statute.